For the appellant is Mr. Foreman, can I hear you, and Mr. Bailey, I wasn't sure how to pronounce Mr. Bailey for the appellate. Okay, Mr. Foreman, you may proceed, sir. Your honors, may it please the court. Counsel. Counsel. Mr. Bektesoski. Your honors, in 2010, Mr. Bektesoski and Mr. Singh entered into a contract to purchase a gas station, which had been owned by Mr. Bektesoski, in Atlanta, Illinois. It was a turnkey operation, as are most gas stations. They used one attorney to execute the contract. Both parties testified during the course of the trial that they understood the nature and content of the contract. The contract provided certain provisions, which we'll get into, but basically the contract provided that the seller was to provide the buyer with a title commitment within a reasonable period of time. That gave the buyer an opportunity to examine the nature of the title commitment, and if he did not like the title commitment, then he had one of several different ways he could move from there. Mr. Singh executed the contract, took over the gas station, and if you imagine what he would have done in 18 months of operating a gas station, you can understand why we're arguing the principle of waiver. This was a basically a turnkey operation, if you will. Mr. Singh received some assistance from Mr. Bektesoski in the sense that, well, here's where you put your inventory, this is how you pump gas. But there was no ongoing period of training. And I say this to emphasize the fact that after the execution of the contract and the closing on the property, that was for all intents and purposes was it. There was nothing further to be done. About 18 months into the contract, Mr. Singh, for one reason or another, I suspect his deposition testimony or his trial testimony leads me to believe that he found the operation of this gas station to be incredibly unprofitable. A lot of gas stations aren't. It was at that time that he was approached by Casey's. Let me stand corrected. I don't know if he approached them or they approached him. But there was an opportunity to sell this property to Casey's. For one, it fell through. It fell through because I think there were some environmental difficulties discovered. Mr. Singh then acquired the assistance of an attorney where previously he admitted he did not have an attorney. He said he felt comfortable and did not need an attorney at the initial dealings on this project. At that time, he stopped paying. We filed a complaint in the fourth voluntary detainer. He filed a counterclaim. The court filed for him on his counterclaim. What we're arguing today, Your Honors, is that his actions in the 18 months following the purchase of the property constitute a waiver. That because he did not seek immediately that title commitment, which, yes, we were required to provide, but because he did not follow through on that, and that being a condition precedent, he waived his rights in the contract, specifically those rights under Section 2.5 of the contract. And if you imagine what he did within that 18 months, there was, in going forward, he made it clear to my client, Mr. Bektashelsky, that he had no further dealings with that property, that he didn't want anything further from Mr. Bektashelsky with that property. And the case law, which we've provided, of course, I'm sure Your Honors are well aware of, do provide for an express or implied waiver. That's what we're arguing in this case. If this Court finds that there's either an express or implied waiver, we think this Court can find either based upon his conduct, the nature of damages, of course, will not be necessary to examine. Because if he waived the provisions of the contract, then he receives no damages. If, however, this Court finds that we are not entitled to argue waiver, or that waiver is not an issue in this case, then we have the issue of damages. Mr. Singh paid $150,000 down on this property. He paid $10,000 cash up front, earnest money. The other $140,000 was to be paid over a period of time. With that money, Mr. Bektashelsky was going to pay down certain requirements on the property, whether it was a mortgage existing, there were some other taxes due. We argue that Mr. Singh was well aware of this, and went ahead on this business deal anyhow. If waiver is not found, then we think the measure of damages is not the measure of damages as set forth by the trial court. We think that the $10,000 earnest money ought to be retained by my client. That's earnest money. We think that the $140,000, if at all, may be that amount which this Court may properly fine for damages, although we're not admitting that. We're not suggesting that this Court go ahead and do that. But we don't find that the attorney's fees of Mr. Montalvo would be an appropriate measure of damages. Nor do we find that the alleged $25,000, which he had hoped to make off of a profit, he had hoped to make off the sale to Casey's, would be an appropriate measure of damages either. The reason for that, Your Honors, is this. In executing the contract, there was no contemplation of a further sale. Now, Mr. Singh, in his mind, may have had a contemplation of a further sale, but in the contract, there's no indication of a contemplation of a further sale. As Your Honors know, if you're entering into a contract, and you're entering into a contract for something, an item that you want to improve and sell later on, you've got to make sure that basically the substructure, be it a car, a house, whatever, a building, is sound enough that you can build upon that and sell it later. But there was no discussion here. Mr. Singh didn't say, well, you know, I hope this is good. I hope this is a good corner. I hope this is a profitable corner. Let's put that in the contract because in 18 months I'm going to sell it. That was not in the contract. So there was no contemplation of those kinds of profits. That's Hadley v. Baxendale, which I know this Court is well aware of. In summary, Your Honors, 18 months went by. 18 months went by. If you look at the trial court testimony of Mr. Singh, it was only after he decided that this property was not going to be profitable that he started looking for a way out. I think that that creates quite a chilling effect when you look at business relationships. If I sign a contract. The trial court addressed all this and they're conducting a trial. It says, at best, the lack of action in closing is neutral. The court found no waiver present. Isn't the standard of review here something where we should be deferential to all that? I think that if I'm correct that the standard of review is denotable. Not when you hear evidence. I mean, he heard evidence and decided was there a waiver that occurred in this case. Well, I find that. There's nothing to know about that. He heard from all the people about it. Well, I think this court can re-examine the facts and find that there was a waiver in this case. It's interesting that the trial court asked both counsels for briefing on the issue of waiver and found that there was no waiver. And my apology to the trial court was, well, if there's no waiver after 18 months, very respectfully, of course, is there a waiver after two years? Is there a waiver after three years? I mean, at what point in time does a party to a contract find solitude in knowing that the contract's been signed, the property's been sold, and now I'm walking away? That's our concern. It's almost a latches argument in the sense that at some point in time things have to be put to rest. And, of course, asking the trial court to provide an advisory opinion on the length of time is not something I'm entitled to. But that's our point. At what point in time is it? What if it was 19 months? What if it was 20 months? I mean, what if it was five years? Well, that might have made a difference if it had been five years. But the court was addressing the particular time frame in this case under these particular circumstances. I understand. Thank you, Your Honor. Thank you. Mr. Bailey? Thank you. May it please the Court. Counsel. Gentlemen, I think this case is controlled by a contract. This is a contract case. It really states the provisions by which these parties outline their dealings. In this contract, it was provided that there be two closings. One, a closing when the contract is signed and the down payment is paid, $150,000 is paid. At the first closing, my client took possession of the property, paid his money, and took over the business, started running the business. He ran the business for 18 months. The contract provided, however, that after a period of time, he would be responsible, or they'd have a final closing, and at the final closing, he would get title. In other words, the deed would be filed from the plaintiff to my clients, transferring the title over to him, and he would see that the final compensation was paid to the plaintiffs. When was that supposed to occur? Five years after the original contract was signed. There's a balloon payment. A lot of times those get extended, and so it's a 20-year amortization on the payments. But the contract provided after five years was going to be paid off. Well, the contract also provided that a title commitment was going to be procured and provided to him within five days, or with 10 days prior to closing. That wasn't done. The attorney involved didn't order a title commitment. The contract goes on to say, in such case, title... So we had one lawyer involved in this case? At the time of the closing. For? Both sides. Although, I shouldn't say he represented my client, because in the contract it provides that he represented the seller. Okay. But this contract says, in case such title evidence is not delivered to buyers or its attorney within a reasonable time, or material objections made to this title in such report are not cured within 30 days after a report is such delivered, this contract at buyer's option shall be void, and all monies paid shall be returned to buyers. Contract provides that the title commitment wasn't issued in a reasonable time, and once he did receive it, and it showed objections, he could void the contract. Well, you heard Mr. Foreman's argument, what's a reasonable time under these circumstances? And if this is appropriate, how about 3 years or 5 years? I think it could be 5 years, Your Honor, when he got ready to pay it off, or 20 years. If you don't have good title, you don't have good title. At the end of the term, when he got a title commitment, he finds out there's environmental issues, he finds out there's liens that exceed the amount he owes on the property. What's he to do? Is he to take title and then wait to get paid back from the seller? Well, how about asking for this in a timely fashion? Well, it's not his obligation to ask for it. It's the buyer's responsibility to deliver it, and they have never delivered it. The only time he got a title commitment was when he went to sell it to Casey's. He got a title commitment for that sale, Casey's sent it to him. Casey's, when he sold the property, he had a contract for sale, and Casey's voided that contract when they found, first, that there was environmental problems, and second, that the liens exceeded the amount of money that was owed on the original. But for the involvement of Casey's, a decade might have passed, huh? It could have, yeah. What about Mr. Foreman's claim? Isn't there ever any obligation upon the person who's supposedly a beneficiary of this contractual provision to exercise it? And say, hey, where's the documentation I'm supposed to get? Well, he didn't have the obligation to do that because the contract provided. If it wasn't provided within a reasonable time, or a material objection made to the title and such report are not cured, once determined. He did get a title commitment, 18 months. It could have been 20 years. Should have been able to void it because the commitment came back. It showed $186,000 lien to the state of Illinois. It showed $100,000 mortgage to FS. Now, I understand from the testimony that mortgage has been paid down, but that lien to the state of Illinois was filed after Mr. Singh took possession. There's even reference in the contract to if there's any. The mortgage is really kind of not very important, is it? Given that the contract language says something about that's going to be paid before you ever have to worry about it. Right, but it also says in the contract that the encumbrances shall not exceed the value owed on the property. When you add the lien to the government and even if it's $8,000 to FS, it exceeds the value that Mr. Singh had to pay. So what is he to do? Say he did sell it to Casey's and these liens exceeded the amount of money that he owes. Does he go back to the seller and does he get the money? Does he get the difference, that $8,000 difference that the liens are greater than he owes on the property? Submit to the court. At that point in time, you can void the contract and ask for your money back as it's provided in Section 2.5 of the contract itself. It's a simple contract case. The contract outlines what is to happen in this situation where the title is subject to liens that exceed the amount that you owe on the property. In addition to those issues, we also have an environmental issue. The contract provides that the plaintiff knew nothing about any environmental issues. Well, it turns out there was an environmental or gas leak in the years that they owned the property in 2008, that there was a prior leak in 2001 that had to be remediated. What about the leak though in 2008? There's a letter that says no problem, no remediation necessary. There's no remediation for that one, but he said there's no environmental issues. So that would still be an issue even if the EPA says you don't have to remediate? It's still a violation. It's still an issue. As we all know, standards change. The 2001 leak did require or would require remediation, as I understand the facts, which would close the business for a period of four to six months. We don't really know how long. So with all this involved, my client had no choice. Now they can say he wanted to get rid of the property because it wasn't profitable. He paid every payment until October of 2011 when he found out these things, when he found out there was an environmental problem, when he found out that liens exceeded the amount of money he owed on it. He had no choice. He couldn't keep the property. He couldn't sell it. He couldn't mortgage it. How many payments did he make? That's a good question. Let's see. There's 17 payments. He paid every month. He had it for 18 months. Put $150,000 down. That's a significant investment. At the end of it all, the court heard all the evidence. The court made a rational ruling. He should get his money back, as set forth in the contract. Also awarded my client a lost profit on the sale of the cases. It was a contract. He lost that money because of the problems, and I don't want to call fraud, but sure, misrepresentation by the seller. He knew that these liens were out there. He knew that there were environmental issues. So the test here really is whether the trial court determination is against the manifest way of the evidence. And I submit that the evidence is clear. There's no waiver here. Those waiver cases the plaintiff relies on are cases where contractors hire a subcontractor to come work, and the contract says, okay, you're going to give me insurance. Well, they don't get insurance. The subcontractor does his work. The subcontractor gets paid, thinks he's done. After the subcontractor is done, there's a lawsuit, and then the contractor says, where's my insurance? It's not the case we have here. It was completely, the contract had completely resolved at that point. So this is more like the Batterton case where they distinguish it and said that it's not a condition of precedent to start working. The supplying of insurance was requested, should have been provided. You don't get out of it. There's no waiver unless it's a condition of precedent to start working. And that's really what we have here. The contract provides that the title commitment wasn't going to be necessarily provided before Mr. Singh took position. The title commitment was going to be provided prior to the final closing because that's when you need it. That's when really issues come up. If you get a title commitment at the time of the first closing, generally you get another title commitment before the second closing. The buyer doesn't have to provide that one. But the reason you get two commitments is because 20 years down the road, as happened here, other liens can be placed on the name of the seller, shows up a lien on your property, something that has to be taken care of at the final closing. In this case, we're actually fortunate that Casey stepped in and told us there were these problems. My client would have continued to pay on property, but there's no way he could get rid of it and yet recoup the money that he was paying to the plaintiff here. At the end of 20 years, he would have paid the contract down completely. There would still be liens on the property. There's still environmental problems that would make the property worth much less money. And secondly, would be subject to the liens that the plaintiff had on the property, which he had no control of, and would eventually have to pay if he were to ever try and sell it. In essence, Your Honor, we're asking that the court, and I know it will, look at the facts of the case, look at the decision of the trial court, affirm the trial court, because it's a reasonable decision to look at the facts that were presented to them, and in light of the law and the facts. Thank you. Thank you, counsel. Mr. Foreman, any rebuttal, sir? Thank you, Your Honor. Okay. Your Honor, number one, my clients did not own the gas station in 2001. Number two, as the court noted, in 2008 when they did own the gas station, there was a leak, but it was not considered to be one that had to be remediated. Number three, my client provided to the buyer at the time of closing an exhibit, which is part of the brief here, it's an amortization of the money owed to F&S Ag Land. Number four, my client advised Mr. Singh of any problems that were existing and further advised Mr. Singh that by way of this amortization, any money that you're paying to me is going to pay all these bills. So Mr. Singh could be comfortable in the knowledge that any encumbrances on the title would be resolved by the time he took a full title at a later point in time, which Mr. Bailey has mentioned. Number five, as Mr. Bailey has mentioned in his brief, it would only be an environmental audit, something I didn't know until I handled this case, it would only be an environmental audit that would show environmental problems. I was mistaken, and I apologize for misleading the court. I was mistaken in saying the title commitment would provide that. Mr. Bailey, in his brief, pointed out that no, it would only be an environmental audit. Nobody did an environmental audit. So here we have two years down the road, he goes to sell to Casey's, and Casey says, well, we need an environmental audit, they find these environmental problems. I don't think anybody should... What about the State of Illinois League? That is still ongoing, and we're going to have that... Well, it's going to be resolved in a couple weeks, but yes, he was advised of the problems with the taxes, and again, Mr. Bekdashovsky made it clear to Mr. Singh that he would hold him harmless from any and all encumbrances on that title. Mr. Bekdashovsky wanted to sell that gas station. He did that. Mr. Singh accepted that gas station, did not push for a title commitment. It was only after 18 months he decided he didn't want it because it didn't make a profit. I would refer you to his trial testimony, pages 31 and seconder, where he admits he didn't contemplate a profit, he couldn't make a profit, the gas station was operating at a loss. Of course he wanted to sell it. That makes perfect sense. But the fact that he couldn't sell it is not something my client should be blamed for. Thank you, Your Honors.  Thank you. Thank you, Counsel. I will take this matter into advisement and recess. Thank you very much.